OPINION OF THE COURT
David Goldstein, J.
This action involves a dispute between plaintiff Burton N. Pugach (Pugach) and defendant Evangeline Borja, which erupted upon the demise of a five-year extramarital relationship between the parties. Pugach, a disbarred lawyer, alleges *684 that upon his refusal to obtain a divorce from his wife, plaintiff Linda Pugach (Linda), Borja embarked upon a campaign to destroy him both personally and financially, and that she enlisted the assistance of the codefendants in doing so.
Pugach was arrested on October 15, 1996, accused of acts of harassment, abuse and menacing directed toward Borja on various dates, from October 8 through 15, 1996. The charges in the information, dated October 16, 1996, include three counts of aggravated harassment in the second degree (Penal Law § 240.30 [1]), one count of menacing in the second degree (Penal Law § 120.14 [2]), one count of sexual abuse in the third degree (Penal Law § 130.55), four counts of harassment in the second degree (Penal Law § 240.26 [1]) and one count of harassment in the second degree (Penal Law § 240.26 [3]).
Thereafter, on October 23, 1996, Boija obtained an order of protection from the criminal court. The order precluded Pugach from entering the office building where Borja and the other individual defendants worked, which was located at 118-21 Queens Boulevard, Kew Gardens, New York. It directed him not to enter the building prior to 6:00 p.m. on weekdays, and prohibited any mail, telephone calls or contact with Borja. Under its terms, Pugach was permitted to enter the building, only after 6:00 p.m. and all day on Saturdays, apparently to allow him to conduct his business affairs from his office, which was located in the building. Neither the propriety of that order nor its permissible scope is before me on this motion.
It is alleged that Borja, who was as an employee of Patient Care, Inc. (Patient Care), apprised her co-workers, including Bancy, of the order of protection. On October 29, 1996, Borja reported to the police that Bancy told her that the latter had observed Pugach in an elevator in the building, at approximately 4:15 or 4:20 p.m. The police contacted Bancy and, based upon her statements and those provided by Borja, an information was prepared with corroborating affidavits by both Borja and Bancy, charging Pugach with one count of criminal contempt in the first degree (Penal Law § 215.51 [b]) and one count of criminal contempt in the second degree (Penal Law § 215.50 [3]), for allegedly violating the October 23rd order of protection.
Pugach was arrested on October 30, 1996, and was subsequently .tried before a jury on the various charges in the information and the charge of criminal contempt in the second degree, based upon the alleged unlawful entry of the building. He was acquitted on all charges except one count of harass *685 ment in the second degree, a violation (see, Penal Law § 240.26 [1]), as to which he was found guilty.
Plaintiffs, appearing pro se, thereafter commenced this action, asserting various causes of action against Borja, Patient Care, Bancy and Chua. They allege they sustained various injuries as a consequence of the tortious acts committed by defendants. The complaint contains causes of action by Pugach for malicious prosecution arising out of the October 15th arrest (first cause of action) and the October 30th arrest (second cause of action); a claim against Patient Care for failing to transfer Borja, which Pugach argued was a ratification of the malicious prosecution (third cause of action); and causes by Linda for a 1991 violation of her right to privacy in relation to the confidentiality of her medical records (fourth cause of action) and for loss of consortium (fifth cause of action).
It also appears that Pugach had commenced a Federal court action entitled Pugach v Safir (US Dist Ct, ED NY, CV-96-5497 [DGT]) asserting various causes of action. The Federal action was dismissed on September 25, 1997, prior to final submission of the instant motions, and led to Pugach’s withdrawal of the first, third and fourth causes of action. Plainly, this resulted from the preclusive effect of the Federal determination. The withdrawal is in a letter to the court, which was repeated on oral argument. Nevertheless, it is also clear that the withdrawal was in part an effort to avoid the legal ramifications of Pugach having been found guilty on one of the harassment charges, in terms of his establishing that there was a favorable termination of the criminal proceeding, a critical consideration. On prior appearances, this court had raised with the parties whether a malicious prosecution claim could be brought where a party, with multiple charges, was acquitted on all counts except one violation, albeit of a minor nature in relation to the other charges. Without question, Pugach was attempting to distance himself, as much as possible, from the effect his conviction might have on his right to pursue relief for malicious prosecution.
Also unanswered is how Pugach can appear for or on behalf of his wife, either on these motions or in withdrawing the fourth cause of action. She is also proceeding pro se, but is in default and has not appeared on these motions. Pugach, who is not an attorney, may not appear on her behalf. Upon this basis, the court will consider the withdrawal only to the extent that it removes the underlying predicate for so much of Linda’s derivative claim, interposed in the fifth cause of action, which is *686 based upon the reassertion of the allegations of the first and third causes of action. The withdrawal of the latter necessitates a dismissal of so much of the fifth cause of action which alleges a derivative claim. (See, Holmes v City of New Rochelle, 190 AD2d 713.)
The withdrawal, however, is not binding upon Linda in relation to the fourth cause of action. As noted, Pugach lacks authority to represent his wife, since he is not a member of the Bar, having been previously disbarred (CPLR 321 [a]). Nor does he have any authority to act for her. Nevertheless, notwithstanding the lack of binding effect of the purported withdrawal, the fourth cause of action must be dismissed as time barred. Linda alleges that both Borja and Patient Care breached their duty of confidentiality when (1) Borja, in the course of her employment, disclosed the content of her medical records without her authority; (2) this was done to induce Pugach to continue their affair; and (3) as a result, she suffered great mental distress and anguish. Inasmuch as the claim seeks relief for breach of the duty of confidentiality, and requests damages other than for economic loss, it sounds in tort, for violation of the right of privacy, not for breach of contract. Essentially, what is charged is a breach of trust placed in Borja, which is critical to the nurse-patient relationship. Since the claim sounds in negligence, premised upon the breach of the independent duty not to disclose confidential patient information (see, CPLR 4504; 8 NYCRR 29.1 [a] [8]), the three-year Statute of Limitations provided in CPLR 214 (5) is applicable. The fourth cause of action accrued on September 17, 1991, when, it is alleged, Borja made the unauthorized disclosure. Inasmuch as the action was commenced in 1997, the claim must be dismissed as barred by the operative three-year limitations period.
With respect to Pugach’s second cause of action and so much of Linda’s fifth cause of action, which is derivatively based thereon, plaintiffs have failed to establish the elements of a claim for malicious prosecution.
The essential elements of a claim to recover damages for malicious prosecution are: (1) the defendant either initiated or continued a criminal proceeding against the plaintiff; (2) the proceeding was terminated in plaintiffs favor; (3) there was no probable cause for the criminal proceeding; and (4) the criminal proceeding was instituted with malice. (Colon v City of New York, 60 NY2d 78, 82; Martin v City of Albany, 42 NY2d 13, 16; Broughton v State of New York, 37 NY2d 451, 457, cert denied sub nom. Schanbarger v Kellogg, 423 US 929.) *687 With respect to the first element of initiation, Borja and Bancy did not commence the criminal proceeding as against Pugach. They each signed corroborating affidavits, which supported the accusatory instrument that had been filed by the police. (See, Bonfante v Golub Corp., 186 AD2d 343; cf., Gregorio v Terminal Trading Corp., 39 AD2d 705.) In addition, Borja testified at the criminal trial. A person who, in a fair and truthful manner, has provided the police with information or reported a crime, or has provided testimony, may not be considered as having commenced a prosecution. (See, Hopkinson v Lehigh Val. R. R. Co., 249 NY 296, 301; Viza v Town of Greece, 94 AD2d 965; see also, Schiffren v Kramer, 225 AD2d 757, 758.) To meet the initiation element, plaintiff must demonstrate that the defendant “played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act”. (Viza v Town of Greece, supra, at 966.) Here, Pugach has neither claimed nor offered anything to indicate that defendants perjured themselves, failed to provide full and complete information, or advised, encouraged or importuned the police to act.
With respect to the second element of favorable termination, Borja and Bancy argue that, since Pugach was convicted on one count of harassment in the second degree, the underlying prosecution cannot be viewed as having been terminated in his favor. Although Pugach seeks to have this court ignore the conviction and focus only upon his acquittal on the criminal contempt charge, it may not properly do so. Plainly, all of the charges arise out of and relate to an alleged persistent course of conduct, carried out over a period of time.
The issue whether a plaintiff may establish a favorable termination where he has been acquitted on a criminal charge which forms the basis for the malicious prosecution suit, but not acquitted on other related criminal charges, was addressed by the Appellate Division, First Department, in Lancaster v Kindor (98 AD2d 300, affd 65 NY2d 804). In Lancaster (supra), the Court questioned whether the plaintiff had demonstrated a critical element of the cause of action, namely, termination of the criminal proceeding in her favor. In that case, plaintiff was ultimately found not guilty of harassment, but this occurred only after she had received two adjournments in contemplation of dismissal (ACDs), which were vacated because of her alleged continued harassment of the defendant. Consistent with well-recognized principles, the First Department held that an adjournment in contemplation of dismissal was not a favorable *688 termination for purposes of a malicious prosecution action, since an ACD leaves open and unanswered the question of guilt, thus precluding an action for malicious prosecution by one who accepts such a disposition. (See also, Hollender v Trump Vil. Coop., 58 NY2d 420.) Plainly, what is needed is a termination which affirmatively answers the question of guilt or innocence.
Here, Pugach was convicted of harassment in the second degree, a violation, which he claims was relatively minor in relation to the other, more serious charges. In now proceeding on a claim for malicious prosecution, based upon his acquittal on the criminal contempt charge, Pugach seeks to disassociate that charge and arrest for violation of the order of protection, from the prior arrest and charges for harassment, menacing and sexual abuse. In doing so, he overlooks that, while there were two, separate arrests and distinct criminal charges, the charges were related in the sense that they originated out of the relationship between the parties and the pattern of conduct allegedly undertaken by him. Thus, on this record, the termination of the criminal proceeding did not amount to a complete vindication in terms of his guilt or innocence, as is required to sustain a claim for malicious prosecution.
It has been generally recognized that, in order to maintain an action for malicious prosecution, a plaintiff must demonstrate that the criminal action was terminated in his favor. Reliance upon a certificate of disposition that the criminal charge was dismissed, without more, is insufficient, since it leaves unanswered the plaintiffs guilt or innocence. (See, Hayes v Schultz, 150 AD2d 522.) The final disposition must reflect the innocence of the accused (see, Hollender v Trump Vil. Coop., supra, at 425-426 [where it was held that an adjournment in contemplation of dismissal is not an adjudication of guilt or innocence]).
On this basis, it has been held that a dismissal of criminal charges for want of subject matter jurisdiction (Heaney v Purdy, 29 NY2d 157), or on motion of the prosecution in the interest of justice (Ryan v New York Tel. Co., 62 NY2d 494, 504-505), or on speedy trial grounds (Witcher v Children’s Tel. Workshop, 187 AD2d 292), does not constitute a termination favorable to the accused. Similarly, it has been recognized that a dismissal on the prosecution’s own motion “constituted no more than an admission that the People lacked evidence to establish a prima facie case of guilt”, not that the arrest lacked probable cause (Colon v City of New York, 60 NY2d 78, 84, supra).
*689 In our case, Pugach relies upon Janetka v Dabe (892 F2d 187), wherein the Court of Appeals, Second Circuit, held that, despite a conviction on a charge for disorderly conduct (a violation), an acquittal for resisting arrest (a misdemeanor) was a favorable termination for purposes of establishing plaintiffs right to proceed against the police on a malicious prosecution claim. In doing so, the court recognized that, to hold otherwise, could encourage police officers to add unwarranted, more serious charges to legitimate, minor charges with impunity. That reasoning was repeated in DiBlasio v City of New York (102 F3d 654, 658), where the court expressed concern as to “the possibility of a prosecutor securing an indictment for an easily provable minor offense and adding to it more serious charges with the hope that proof of probable cause on the lesser charge would insulate the prosecutor from liability for malicious prosecution on the unproved serious ones. See, e.g., Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991).” Such concerns of police or prosecutorial overreaching or misconduct, however, have no applicability here, where plaintiff is proceeding against private parties, not governmental entities. In any event, no proof of “piling on” of charges has been offered or even suggested in this case.
Aside from the foregoing, the situation in Janetka v Dabe (supra) is factually distinguishable from that in this case. Janetka concerned two separate, independent offenses directed at two different people (disorderly conduct directed at an unidentified Hispanic man, and resisting arrest directed at the police). Plainly, it is on that factual presentation and distinction that the court found that there had been a favorable termination as a result of the acquittal of the charge involving the police officers. (See also, Goree v Gunning, 738 F Supp 79.) However, to the extent the Second Circuit intended to expand New York law, so as to permit a malicious prosecution claim to proceed where the termination of the criminal proceeding did not amount to a complete vindication in terms of guilt or innocence, I disagree with such a holding as inconsistent with the operative standard in this State.
In any event, in our case, unlike Janetka (supra), the criminal proceeding concerned a pattern of harassment and offensive conduct directed at but one individual, Borja, which resulted in diverse criminal charges which proceeded to trial together. What was involved was repetitive acts of harassment. In my view, in such case, the charges ought not be considered separately, in piecemeal fashion, as Pugach maintains. Rather, *690 one must ascertain if, in reality, they amount to a pattern of behavior. This is especially so if the behavior increases in frequency over time, or has a potential for violence, as is invariably the situation in domestic cases and those, as here, involving intimate relationships which take a turn for the worse. Plainly, the alleged acts of harassment did not take place on only one day. Nor did they arise out of a single incident. Nevertheless, they were in relatively close temporal proximity to form a course or pattern of conduct which could evince an intention to intimidate, threaten or alarm the other party, sufficient to permit joinder in one criminal trial. (See, Campion Funeral Home v State of New York, 166 AD2d 32.)
Contrary to Pugach’s claim, the charge on which he was convicted, namely, harassment in the second degree, is neither technical nor innocuous because it constitutes a violation and not a crime. It is a criminal charge nonetheless and the conviction, as a matter of law, precludes a determination that the underlying criminal prosecution terminated in his favor. (See, Campion Funeral Home v State of New York, supra, at 36.) Therefore, the claim for malicious prosecution is improper and must be dismissed.
With respect to the third element, Pugach cannot show a lack of probable cause. The finding of guilt on the harassment charge, in and of itself, affirmatively establishes that there was probable cause to prosecute the criminal case. (See, Heaney v Purdy, 29 NY2d 157, 160, supra.) Moreover, the finding and holding by the Criminal Court, following the pretrial suppression hearing, that there was probable cause to arrest on the criminal contempt charge, mandates dismissal of the malicious prosecution cause of action. A pretrial determination that the police had probable cause to arrest creates a presumption of probable cause to prosecute the criminal case. (See, Colon v City of New York, supra; see also, Jean-Mary v City of New York, 234 AD2d 515, lv denied 90 NY2d 809; Carthens v City of New York, 168 AD2d 408, 409; Lancaster v Kindor, supra.) Such presumption must be overcome by evidence establishing fraud, perjury or the withholding of evidence or other bad-faith acts. (See, Colon v City of New York, supra, at 83, citing Lee v City of Mount Vernon, 49 NY2d 1041; Brown v Roland, 215 AD2d 1000, lv dismissed 87 NY2d 861; Gisondi v Town of Harrison, 120 AD2d 48, 53.) Insofar as applicable here, Pugach’s allegations of perjury on the part of both Borja and Bancy are merely conclusory and are without requisite substantiation, sufficient to overcome the presumption of probable cause. (See, *691 Kliebert v McKoan, 228 AD2d 232, lv denied 89 NY2d 802; see also, Jean-Mary v City of New York, supra; Menio v Akzo Salt, 217 AD2d 334; Brown v Roland, supra.)
Upon the foregoing, Pugach’s second cause of action for malicious prosecution must be dismissed and, since he has failed to establish the requisite elements of a viable claim for relief, the remaining portion of the derivative fifth cause of action by Linda for loss of consortium as against Borja and Bancy must fail, and is similarly dismissed. (See, Holmes v City of New Rochelle, 190 AD2d 713, supra.)
Under the circumstances, the motions by Borja (No. 40) and Bancy (No. 45) to dismiss the second and fifth causes of action as against them are granted in all respects.